Filed 7/7/22  In re M.T. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re M.T., a Person Coming Under the Juvenile Court Law. | B314492 |
| | (Los Angeles County Super. Ct. Nos. 19CCJP00708 19CCJP00708D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MARCO T., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Hernan D. Vera, Judge.  Affirmed.

Jacob Olson, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

Marco T. (father) appeals from jurisdiction and disposition orders concerning his daughter, M.T. Father's sole contention on appeal is that the juvenile court and the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the initial inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related state statutes and court rules. We agree that DCFS did not comply with its statutory inquiry obligations. However, we conclude the error was harmless under the standard articulated in *In re Dezi. C.* 79 Cal.App.5th 769 (*Dezi C.*): the record contains no information suggesting a reason to believe M.T. may be an Indian child, such that further inquiry might lead to a different ICWA finding by the juvenile court. We accordingly affirm the orders.

**BACKGROUND**

Because the sole issue on appeal relates to compliance with ICWA, we limit our summary of the facts to those relevant to that issue except as necessary for context.

Father had sole physical custody of M.T. pursuant to a custody order issued in 2019, at the termination of a previous dependency case involving the family. The custody order permitted M.T.'s mother, Martha A. (mother), to have only monitored visitation with M.T. The family came to the attention of DCFS in April 2021, when a reporting party alleged that father allowed M.T. to have unsupervised and overnight visits with mother, who had a history of substance use and was residing in a homeless encampment.

2

During its ensuing investigation of the allegations, DCFS spoke with paternal grandmother, paternal aunt, paternal uncle, and father's adult daughter, some on multiple occasions. There is no indication in the record that the topic of father's or M.T.'s potential Native American ancestry was raised during these conversations, or during any subsequent conversations with these family members. DCFS detained M.T. from father on April 30, 2021 and placed her with paternal aunt and paternal uncle.

On May 4, 2021, DCFS filed a dependency petition for M.T. pursuant to Welfare and Institutions Code section 300,[1] alleging she was a person described by section 300, subdivisions (b) and (j). As relevant here, the petition also stated, "on information and belief," that ICWA inquiry "has been completed." An accompanying Indian Child Inquiry Attachment form (Judicial Council form ICWA-010(A)) stated that a DCFS worker had "completed inquiry by asking the child, the child's parents, and other required and available persons about the child's Indian status." The form indicated only that father had been asked about M.T.'s Indian status, and that the inquiry gave the DCFS worker "no reason to believe the child is or may be an Indian child." The detention report states that father "denied having any Native American ancestry."

Father did not appear at the detention hearing or the first arraignment hearing. Father appeared at a continued arraignment hearing held July 28, 2021 and filed a March 2020 version of the Parental Notification of Indian Status form (Judicial Council form ICWA-020) the same day. The form listed several options regarding heritage, including "I am or may be a

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

member of, or eligible for membership in, a federally recognized Indian tribe," and "One or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe." Father checked the box indicating that "None of the above" statements applied. Father also indicated that he previously filed a form ICWA-020 with the court. We took judicial notice of a previous version of the form ICWA-020 that father filed in April 2018.[2] On that form, father checked a box stating, "I have no Indian ancestry as far as I know"; that box does not appear on the March 2020 version of the form. At the July 28, 2021 hearing, the court found father was M.T.'s presumed father and ICWA did "not apply on the father's side."[3]

The court held an adjudication hearing on August 9, 2021. Father was present and testified telephonically. The court sustained one section 300, subdivision (b)(1) allegation as amended and a subdivision (j) allegation as pled; it dismissed the remaining allegations. At disposition, the court removed M.T. from both parents, with reunification services and monitored visitation for father. Father timely appealed.

---

[2]    The juvenile court also took judicial notice of "prior sustained petition(s), case plans, and findings and orders made in this case and any other sibling case."

[3]    The court deferred findings regarding mother, who had not yet appeared. In prior proceedings involving the family, mother completed a form ICWA-020 indicating that she had "no Indian ancestry as far as I know."

4

## DISCUSSION

### I. ICWA Inquiry Requirements

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) "ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.) California has incorporated many ICWA standards and requirements into state statutory law. (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)

"In any given case, ICWA applies or not depending on whether the child who is the subject of the custody proceeding is an Indian child." (*In re Abbigail A.*, *supra*, 1 Cal.5th at p. 90.) Both ICWA and state statutory law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); accord, § 224.1, subds. (a)-(b).) When a court "knows or has reason to know that an Indian child is involved" in "any involuntary proceedings in a State court," the agency seeking foster care placement of an Indian child is required to "notify the parent or Indian custodian and the Indian child's tribe . . . of the pending proceedings and of their right of intervention. . . . No foster care placement . . . proceeding shall be held until at least ten days after receipt of

5

notice by the parent or Indian custodian and the tribe or the Secretary . . . ." (25 U.S. § 1912(a).)

"""ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child. [Citation.] Federal regulations implementing ICWA, however, require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.'"" (*In re Y.W.* (2021) 70 Cal.App.5th 542, 551; see 25 C.F.R. § 23.107(a) (2021).) Additionally, state law "more broadly imposes on social services agencies and juvenile courts (but not parents) an 'affirmative and continuing duty to inquire' whether a child in the dependency proceeding 'is or may be an Indian child.'" (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741-742; see § 224.2, subd. (a); *In re Y.W., supra*, 70 Cal.App.5th at p. 551.)

"The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) The inquiry duty continues if a child is placed in the temporary custody of a county welfare department. (§ 224.2, subd. (b).) "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is

6

domiciled." (*Ibid.*)  If this initial inquiry creates a "reason to believe" a child is an Indian child, DCFS is required to "make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."  (§ 224.2, subd. (e); *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1052.)  If the further inquiry gives DCFS a "'reason to know'" the child is an Indian child, then the formal notice requirements set forth in section 224.3 apply.  (§§ 224.2, subd. (d), 224.3, subd. (a); *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1052.)  Alternatively, the juvenile court may find that a child is not an Indian child if the agency's "proper and adequate" inquiry and due diligence reveals no "reason to know" the child is an Indian child.  (§ 224.2, subd. (i)(2); *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050.)

"We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence."  (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; see also *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1051; § 224.2, subd. (i)(2).)  If an inquiry is inadequate, we "must assess whether it is reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly."  (*Dezi C.*, *supra*, Cal.App.5th at p.776.)  "If so, the error is harmless and we should affirm; otherwise, we must send it back for the Department to conduct a more comprehensive inquiry."  (*Ibid.*)

## II.  Analysis

Father first contends the juvenile court failed to fulfill its initial inquiry duty, because the version of the ICWA-020 form used in this case did not "go first to the question whether there is a reason to believe the child is an Indian, not a reason to know." Father contends the form, adopted by the Judicial Council in March 2020, is improperly limited to tribal membership or

7

eligibility for membership, and therefore aims only at the "reason to know" stage of inquiry.

We are not persuaded. The sole authority father cites in support of this argument, *In re T.G.* (2020) 58 Cal.App.5th 275, 292, is not on point. The mother in *In re T.G.* completed the previous version of the ICWA-020 form, on which she indicated she may have Indian ancestry but did not identify a tribe. (*In re T.G., supra*, 58 Cal.App.5th at pp. 282-283, 292.) The primary issue in the case was not the wording of the form or the adequacy of the court's initial inquiry, but rather the extent of further inquiry required and conducted with mother and her family members. (See *id.* at pp. 285, 292-297.) Indeed, *In re T.G.* expressly concluded the juvenile court "fulfilled its initial obligation to ask about [the mother's] possible Indian ancestry" when it received her completed ICWA-020 form and asked her about her Native American ancestry at the detention hearing, but "failed. . . to ensure the Department complied with its duty of further inquiry." (*Id.* at p. 293.)

Father also contends DCFS failed to fulfill its duty of initial inquiry required by ICWA and related state law. We agree DCFS did not comply with its state law duties.

The record reflects that DCFS spoke only to father about M.T.'s possible Indian ancestry. The duty of initial inquiry under state law was broader, requiring DCFS also to interview, among others, extended family members and others with an interest in the child. (§ 224.2, subd. (b).) The record reflects that DCFS had multiple conversations with M.T.'s paternal relatives, including paternal grandmother, paternal aunt, paternal uncle, and her half-sister (father's adult daughter), but there is no indication that DCFS asked anyone other than father about M.T.'s heritage.

8

Indeed, DCFS does not contend that it discharged its first-step inquiry duty, thus effectively conceding that it did not.

Instead, DCFS asserts that any error is harmless. While the question whether an error is harmless is simple on its face, how to best answer that question in the context of an inadequate ICWA inquiry has proved complex. The courts of appeal have devised at least four different analytical frameworks with which to assess whether a violation of ICWA's initial duty of inquiry is harmless. "These rules exist along a 'continuum.'" (*Dezi C.*, *supra*, 777.) At one end of the continuum is an approach that concludes "the error is in most cases . . . prejudicial and reversible." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 435; see also, e.g., *In re J.C.* (2022) 77 Cal.App.5th 70, 80-82; *In re A.R.* (2022) 77 Cal.App.5th 197, 205; *In re H.V., supra,* 75 Cal.App.5th at p. 438.) At the other end is an approach that treats the error as harmless unless the parent makes a good-faith claim of Native American ancestry on appeal. (See *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069-1071; *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388.) The third and fourth approaches lie in between these poles. *In re Benjamin M.*, *supra,* 70 Cal.App.5th at p. 744 holds that "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where . . . there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." And *Dezi C.*, *supra*, 70 Cal.App.5th at p. 779 holds that "an agency's failure to conduct a proper inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry

9

was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal."

For the reasons articulated in *Dezi C.*, *supra*, we agree that the fourth, "reason to believe" test is the most appropriate approach. It "weaves together the test for harmless error compelled by our State's Constitution with the cascading duties of inquiry imposed upon agencies by our State's ICWA statutes," "reconciles the competing polices at issue when an ICWA objection is asserted . . . at the final phases of the dependency proceedings," and focuses "on what is in the record rather than what is not in the record." (*Dezi C.*, *supra*, 79 Cal.App.5th at pp. 779-782 .) It also minimizes the pitfalls that may result from the other approaches, including parental gameplay, delay of permanency for the children, and inadequate protection of tribes' rights. (See *id.* at pp. 784-785.)

Under that framework, the error in this case is harmless. The record here does not provide a "reason to believe" that M.T. is an Indian child. Father attested—to DCFS, on the ICWA-020 form, and to the juvenile court—that he had no Indian heritage. He and mother both previously attested to a lack of heritage as well, and there is no indication either parent was adopted or otherwise unfamiliar with their biological history. Father also expressly represents on appeal that he "does not now contend there was 'reason to believe' [M.T.] is an Indian child." Under the circumstances presented here, the inadequate ICWA inquiry is harmless.

10

**DISPOSITION**

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


MANELLA, P. J.


CURREY, J.